## No. 13,821.

STATE EX REL. CHARLES F. COLLOM & COMPANY VS. HON. WALTER B. SOMMERVILLE, JUDGE DIVISION "D," CIVIL DISTRICT COURT.

### SYLLABUS.

District judge having refused application for writ of injunction to prevent paving of a street as ordered by the proper authorities, the applicants became relators in a proceeding taken here to obtain a writ of *mandamus* to compel granting of the order of injunction. *Held*: This court will direct the issuance of the writ, or deny it, in its discretion according to the exceptional features of each case submitted, and that no sufficient cause is herein shown justifying the *mandamus* sought.

APPLICATION for Writ of *Mandamus* and *Certiorari*.

*Solomon Wolff* for Relator.

Respondent Judge *pro se.*

(*McCloskey & Benedict* of counsel).

The opinion of the court was delivered by

BLANCHARD, J. Under contract made with the Drainage Commission of the City of New Orleans, relators constructed a covered canal along Third street in the Fourth District of said city.

It seems that this canal had been completed, but the Drainage Commission has not yet definitely accepted the same because of the fact that the Third Street Canal is only part of a system of covered canals which relators contracted to construct, and under the terms of the contract the commission may withhold acceptance of any part of the system until the whole is completed. As relators have not yet completed the whole system they are not in a position to demand the definite acceptance of the Third Street Canal and the payment of the full contract price therefor.

It, nevertheless, appears that the canal as constructed along Third street has been inspected by the engineers of the Drainage Commission and, as set forth in relator's petition, "passed, as being well constructed according to the specifications, and 80% of the cost thereof has been paid and 20% retained for certain purposes, all in accordance with the contract."

When the contract was let for the Third Street Canal it had not been decided by the authorities that that street should be paved. But during the construction of the canal, perhaps subsequent to its construction, it was decided to pave the street with asphaltum, and after due proceedings had the contract for this paving was let to the Louisiana Improvement Company, Limited.

Before the latter company was awarded the contract, relators, ascertaining that it had been decided to pave the street with asphalt, claimed that the right to do this work fell to them under the terms of their contract relating to the construction and covering of the canal along the street, and expressed to the Commission their readiness to undertake the same.

The Commission denied that the paving of the street came within their contract and proceeded to make public offer of the same with the result that the contract for paving was, as stated, let to the Louisiana Improvement Company.

Following this, relators brought suit in the Civil District Court for the Parish of Orleans against the company, the object of which was to obtain an order and writ of injunction preventing and staying said company from entering upon the work of paving the street under this contract.

In their petition for this injunction, relators set forth their contract for the construction of the canal along Third street, and averred that the canal had been constructed and the same had been covered in the manner and method prescribed by the plans and specifications of the Drainage Commission.

They represented that the covering of the canal is formed of large slabs of concrete laid between iron beams extending across the canal, and that these slabs were not intended to and would not carry the weight of ponderous machinery which, it was alleged, the Improvement Company would use in the work of putting down the asphalt pavement.

It was set forth that this pavement would have to be laid, necessarily, on top of the concrete slabs covering the canal, and to do this the Improvement Company would enter upon and take possession of the work of relators, in which they have a property interest inasmuch as the same had not been finally accepted and fully paid for by the Drainage Commission.

It was averred that if the Improvement Company were thus permitted to enter upon the canal and carry out their contract to lay asphalt pavement on or along the street and on and over the canal, they would greatly damage the covering and walls of the canal, that such damage would be irreparable, would give rise to much litigation as to the responsibility therefor, without relators knowing to whom to look for reimbursement, or without knowing whether the party finally cast would be able to respond. That the proposed work is so intimately connected with the work done by relators it would be difficult if not impossible to determine whether any resulting damage was attributable to possible defects in the work done by relators, or to the heavy burdens imposed upon the canal by the Improvement Company—a contractor over whom relators have no control whatever.

There was an allegation of denial of the right of the Drainage Commission, or the Improvement Company, to enter upon the canal until its final acceptance, and the payment therefor in full had been made.

The district judge declined to grant the order of injunction on this *ex parte* showing, and, instead, issued a rule on the Improvement Company to show cause why the same should not be granted.

Responding, the Improvement Company averred, among other things, that the petition for injunction set forth no right or cause of action. It denied that the pavement it proposed to lay on Third street, or the process of laying same, would injure the work done by those seeking the

injunction, if such work had been substantially and properly constructed; that this had been demonstrated upon other streets in the city similarly conditioned. It averred the right and authority of the Drainage Commission to enter upon Third street, which was a street in use for ordinary traffic, and pave the same by contract or otherwise.

On the trial of the rule, testimony was adduced *pro* and *con,* and on consideration thereof, and of the law applicable to the case, the judge declined to issue the injunction.

Whereupon the present application was filed here for a writ of *mandamus* to compel the granting of the order of injunction.

The application sets forth the grounds upon which the writ is demanded—the same, with much amplification, as hereinbefore noted.

While the right of appeal from the order of refusal is not denied, relators urge that to appeal therefrom in the ordinary manner provided by law would not afford relief and would, in effect, amount to a denial of justice, for, pending the appeal, the Improvement Company would prosecute its work, and the injury apprehended would be inflicted before final decision could be had, etc.

To the rule *nisi* the respondent judge sends up all the papers in the original cause, and, *inter alia,* sets forth that upon the trial had in his court as to the right of relators to the writ sought, counsel for plaintiffs, in open court, stated, as the sole and only ground upon which he relied and upon which he based his demand for the injunction, was, that in laying the asphalt the Improvement Company would use a heavy roller; that the same would damage the canal covering; that, later, when relators came to a settlement with the Drainage Commission for the balance due them for the canal, this injury appearing, a question would be raised as to whether it was caused by original defects in relators' work or by the ponderous machinery which the Improvement Company would use; that the true cause of the damage would be rendered impossible of ascertainment, and that the Drainage Commission might refuse to pay the balance remaining due his clients.

*Ruling*—The pavement proposed to be laid upon Third street is a work of public necessity. This is shown by the testimony.

Third street is an important local thoroughfare of the city, and by reason of the work of canal construction done there, the street has now been practically closed to traffic for more than twelve months.

To render it again available for use as a public street it is necessary that some kind of pavement be laid there, and on and over the canal covering.

The proper authorities deemed it advisable to pave the street with asphalt and so ordered. They had the power to do this.

Because there has been no final acceptance of the canal constructed by relators and no final settlement with them for its contract price in full, is not sufficient ground to justify the stoppage of the work of paving.

The Drainage Commission is not shown to be in default in the matter of the acceptance of the canal and settlement therefor. On the contrary, there is in the record a sufficiency of evidence to warrant the statement that it is the relators, themselves, who are in default, if any one be in default. They have not completed other portions of the canal system embraced in their contract, and until the whole is completed are not in a position, under the terms of their contract, to demand acceptance of and full settlement for the Third street canal.

The city in the work of paving its streets cannot be thus delayed.

Relators have been paid 80% of what is due them on the Third street canal; the other 20% is legitimately held back under their contract to await completion of the whole system of canals, and acceptance thereof.

To pay them the 80% it was necessary, it seems, to inspect and "pass" the canal as constructed. This was done by the engineers of the Drainage Commission.

Thus, the condition in which the canal was when completed has been ascertained, and if injury now results to it or its covering from the work of paving proposed to be done by the Improvement Company under its contract, the same ought not to be a matter of much difficulty of ascertainment in the event dispute and controversy with the Drainage Commission should develop on the question of the final acceptance of the canal and payment of the remainder due therefor.

Certainly, whatever small doubt as to this there may be, should not be given the force of preventing or delaying the much needed paving of a public street.

Relators, by the course pursued, have emphasized a protest against the action of the Drainage Commission in entering upon the canal and laying asphalt on and over it before its final acceptance. Notwithstanding, the Commission elect to do so, and this, it would seem, is quite sufficient to fix the responsibility therefor on the Drainage Commission, should injury ensue as the result of laying the pavement. It is not intimated that the Commission may not be able to respond to such liability.

Furthermore, the evidence adduced does not satisfy us that relators' apprehensions as to injury resulting to the canal covering by reason of the work of paving Third street with asphalt are altogether well founded.

Their case in this regard is hardly sufficiently made out. The chief engineer of the Drainage Commission gives testimony to the effect that no injury will result, and while there is evidence contrary to this it is not from engineering sources.

Running through this whole case is the conceded fact that relators, themselves, desired to do the work of paving Third street with asphalt; claimed the right to do it under their contract for the canal construction; demanded to be permitted to do it; and being denied, make special reservation of their rights for damages against the Commission.

The impression made by this is that, in relators' estimation, it is all right and safe for them to enter upon the canal and lay the asphalt pavement, but all wrong and prejudicial to the canal covering for an independent contractor to do so.

True, they assert they would do the work in a way different from that the Improvement Company proposes to do it, and without the use of heavy machinery; but the specifications prescribed for the work by the Drainage Commission would have to be met whether done by relators or by the Improvement Company, and the proposition advanced by relators of their right to do it in their own way without regard to the requirements of the Commission is so unreasonable as to detract from the sincerity or seriousness of the demand they put forward to be allowed to do the work.

Nor can we admit the contention as to any proprietary interest in the canal remaining or vesting in the relators until final acceptance and payment. No such interest results from that clause in the general specifications of their contract, cited by them, and which is as follows:—

"The contractor will be responsible for the work until completed and accepted by the contractee."

Responsibility for it, as used here, does not imply proprietorship.

No, the street and the canal constructed in the center thereof are the property of the city of New Orleans. Eighty per cent. of the contract price of the canal has been paid by the Drainage Commission, and the rights of relators are confined to demanding in due time and receiving the remaining 20%.

The taking possession of the street by the city and paving the same with asphalt is not such an invasion of the rights of relators as justifies

them in invoking the writ of injunction. Considerations of policy and expediency alike forbid a resort to this prohibitive remedy.

There is here no such incompleteness and inadequacy of legal remedy which is held by the authorities to be determinative of the right to the equitable remedy of injunction.

This court will direct the issuance of the writ, or deny it, "in its discretion, according to the exceptional features of each case submitted." State *ex rel.* Murray vs. Judge, 36th L. Ann. 582; State *ex rel.* Nicholson vs. Judge, 37th La. Ann. 842.

It is ordered and decreed that the application herein made for the peremptory writ of *mandamus* be denied at the cost of relators.